# WHEELING.

## McMullen v. Eagan et al.

Submitted June 18, 1881—Decided December 16, 1882.

(*SNYDER, JUDGE, Absent.)

1. If the certificate of the acknowledgment of a deed by a married woman living with her husband shows, that she and her husband jointly acknowledged the deed before a proper officer, such deed is inoperative to convey her interest, though the certificate shows, that she was after such acknowledgment examined privily and apart from her husband by the officer and had the deed fully explained to her and declared, that she had willingly executed the same and did not wish to retract it. (p. 244.)

2. If such deed be recorded, and afterwards the officer re-writes his certificate and signs the same dating it as of the time of the first acknowledgment, and such second certificate states, that she appeared before the officer, and being examined by him privily and apart from her husband and having the deed fully ex-

*Cause submitted before Judge S, took his seat on the bench.

plained to her she acknowledged the same to be her act and declared, that she had willingly executed the same and did not wish to retract it, though such second certificate is in due form, yet the deed will still be inoperative to convey her interest in the land, as the officer has no authority to correct his first certificate, though it was not written in such way as showed the real facts.   (p. 245.)

3. But if she and her husband afterwards go before the clerk of the county court in his office and acknowledge this deed in the manner prescribed by the statute, such acknowledgment if endorsed on the deed and duly recorded by the clerk, which it is his duty to do, this will cure such defect in the first acknowledgment and render the deed operative to convey her interest in the land.   (p. 246.)

4. A married woman living with her husband can convey under our statute-law her separate real estate by joining with her husband and by having the deed acknowledged after privy examination of her in precisely the same manner, as she always could convey her real estate, which was not her separate property ; and she can convey such real estate in no other manner.   (p. 246.)

5. An answer in this State may state such facts, as would be the basis of a cross-bill, and pray affirmative relief ; and it then has the same effect, as a cross-bill formerly had. But this can only be done, when a cross-bill could have been properly filed ; it can not ask such affirmative relief by introducing into it other matters distinct from those, which were stated in the original bill, and on which it was based, but it must be confined to matters involved in the original bill.   (p. 247.)

6. If therefore an injunction to a sale of lands by a trustee be asked in a bill, on the ground that the deed of trust was wholly inoperative to convey the grantor's land because of fatal defects in the deed of trust, the answer can not pray affirmative relief so as to operate as a cross-bill, when the prayer for relief is based on the fact, that the deed of trust was given to secure the purchase-money of the land, and the deed to the grantor if the deed of trust reserved a vendor's lien, which the answer prays may be enforced. In such case there would be brought into the answer as the basis of the prayer for affirmative relief matters distinct from those stated in the bill, which can not be done.   (p. 248.)

7. But if the bill of injunction goes further, and sets out a deed, in which the vendor's lien is reserved, and alleges, that it is fatally defective in not effectually conveying the contingent right of dower of a wife, who signed it, and alleges that more is for this and other reasons claimed to be due under the deed of trust than is really due, and such bill asks general relief, such affirmative relief by the enforcement of the vendor's lien

may be asked in the answer; for such relief is confined to matters involved in the original bill.   (p. 248.)

8. A party not named in the bill, but whose interest in the subject-matter of the bill only appears in the answer of a defendant, can not file an answer to the bill as a defendant, if his doing so without the bill being first formally amended is objected to by the plaintiff; and if the court permits such answer to be filed and afterwards renders a decree against the plaintiff in favor of such party thus informally introduced into the case, the Appellate Court on the appeal of the plaintiff will reverse such decree.  But where the record shows affirmatively, that the plaintiff was present in court, when the party was thus informally introduced into the cause and did not object but filed a replication to such answer, and the cause with reference to such new party was fully and fairly heard on its merits without objection in the court below, this will be regarded as a waiver by the plaintiff of such defect in the proceedings in the court below, and the Appellate Court would not reverse the decree for such defect in the proceedings.   (p. 250.)

9. The circuit court ought not to set aside a sale by a commissioner for inadequacy of price, when there had been two sales of the property previously, and the last sale was not made until after repeated adjournments by the commissioner of sale with a view to the getting of the highest possible price, merely because there was a slight apparent preponderance in the weight of the affidavits filed indicating, that the price obtained was not the full value of the property.  When there is a conflict of views as to the value of property, previous sales and attempted sales are entitled to more weight than the mere opinions of some persons as to its value.   (p. 252.)

10. If the name of the purchaser at such a sale be by mistake not named in a decree confirming such sale, but by mistake the name of some other person is inserted in the decree as the purchaser, such mistake is no ground for reversing the decree in the Appellate Court, if no motion to correct it has been made in the court below.   (p. 253.)

Appeal from and *supersedeas* to two decrees of the circuit court of the county of Kanawha rendered respectively on the 30th day of June, 1876, and on the 20th day of December, 1878, in a cause in said court then pending, wherein Catharine McMullen was plaintiff, and David Eagan and others were defendants, allowed upon the petition of said McMullen.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decrees appealed from.

Green, Judge, furnishes the following statement of the case :

On October 29, 1872, David Eagan and Mary F., his wife, conveyed to Catharine McMullen, the wife of James H. McMullen, a house and lot in Charleston, West Virginia. The consideration recited in the deed was three thousand four hundred dollars, of which one thousand eight hundred dollars is stated to be paid in cash and the balance was to be paid as follows : Two hundred dollars in sixty days and the residue, two thousand four hundred dollars, in six equal annual payments of four hundred dollars each, all bearing ten per cent. interest from the date, and evidenced by the notes of Catharine McMullen to David Eagan of same date. A lien was expressly reserved to secure these deferred payments. The conveyance was with general warranty of title. The acknowledgment was as follows :

"State of West Virginia,

"*County of Kanawha, ss. :*

"On this 30th day of October, 1872, before me, Henry C. McWhorter, a notary public in and for said county, came David Eagan and Mary F. Eagan, his wife, whose names are signed to the foregoing writing, bearing date on the 29th day of October, 1872, and acknowledged the same to be their act and deed; and the said Mary F. Eagan, being by me examined privily and apart from her said husband, and having the writing aforesaid fully explained to her, she, the said Mary F. Eagan, declared that she had willingly executed the same and does not wish to retract it.

"Given under my hand the 30th day of October, 1872.

"H. C. McWhorter,

"*Notary Public.*"

On the day on which this deed bore date, but before it was acknowledged for recordation, a deed of trust was executed by Catharine McMullen, in which her husband united, conveying the same house and lot to F. B. Swann, trustee, to secure the payment of these seven notes, the principal of which amounted to two thousand six hundred dollars. This deed of trust had no special provisions in it in reference to the sale under it. The following was the acknowledgment

ment of it for recordation, made the same day it was executed:

"Kanawha County, Recorder's Office,
"29th October, 1872.

"This deed was this day presented to me and duly acknowledged by James H. McMullen and Catharine McMullen, his wife, parties thereto; and the said Catharine, wife of the said James H. McMullen, being examined by me privily and apart from her husband, and having the deed aforesaid fully explained to her, declared she had willingly signed and executed the same, and that she wished not to retract it, and thereupon the same is admitted to record.

"Teste:

"A. Cunningham, *Rec'r*

"Teste:

"Joel S. Quarrier,
" *Clerk Kanawha County Court.*"

The trustee advertised this house and lot for sale under the provisions of this deed of trust, the sale to take place at the front door of the court-house in Charleston on March 13, 1875, and the terms of sale to be so much cash, as will pay eight hundred dollars, with ten per cent. interest thereon from October 29, 1872, and the residue in four equal payments payable respectively on October 29, 1875, October 29, 1876, October 29, 1877 and October 29, 1878; and the advertisement stated, that the first of these notes of two hundred dollars was paid, and the others were then due.

On March 6, 1875, an injunction was awarded prohibiting T. B. Swan and David Eagan from selling or offering to sell this house and lot until the further order of the court or of a judge in vacation. The order granting this injunction was addressed to the clerk of Kanawha circuit court and was signed by Evermont Ward who did not state in the order, that he was a judge, nor did he sign his name as a judge. He was not the judge of Kanawha circuit but of an adjoining circuit. The bill on which this injunction was awarded, was filed by Catharine McMullen, who alleged, that the deed to her from Eagan and wife was defective, as it was not properly acknowledged by David Eagan's wife, and that the deed of trust was also defective, it not being properly ac-

knowledged by Catharine McMullen the plaintiff. This bill also alleges, that notices of said sale by the trustee were not given in the manner required by the Code of West Virginia. The bill further alleges, that the notice of the sale also states, that "The sum of two thousand four hundred dollars with ten per cent. interest thereon is now due and payable;" but this appears on the face of the bill to be a mistake, as this notice is filed with the bill, and it states, that "two thousand four hundred dollars with ten per cent. interest is now due" but does not say it is "now payable," but on the contrary indicates the reverse. The bill further alleges, that complainant "believes and has been informed, that the first of said notes, due October 29, 1873, has been paid to said Eagan by W. C. Brooks;" but the bill does not say, that it was paid by her authority by said W. C. Brooks, or that he was her agent in paying it. She states, that nothing has been paid on the other four hundred dollar notes, four of which were not due then. The advertisement filed with the bill shows, that the credits on the sale were till the times stated in the bill as the times, when these four notes would become due. No persons were made defendants to this bill except Swan, the trustee, and David Eagan. Copies of the deed and deed of trust above stated and of the acknowledgments on them were filed with the bill as a part thereof; and the bill was sworn to.

To this bill David Eagan filed his answer, also sworn to, at the April rules, 1875. In it he says, that at his request since the filing of the bill H. C. McWhorter has corrected the certificate of the acknowledgment of his wife, Mary F. Eagan, by endorsing on it an acknowledgment in due form by her, which acknowledgemnt now appears on the deed, and which was ante-dated, the date inserted being October 3, 1872, which was the date of the first acknowledgment. This certificate is on the original deed filed with the bill, having been put there since the bill was filed; and the answer asks, that this certificate may be regarded as a part of his answer. It is also stated in this answer, that a similar correction of the erroneous certificate of A. Cunningham, recorder, had in like manner been made on the deed of trust; but the record does not show this to be true; and it can

hardly be true, as A. Cunningham was no longer recorder, when this bill was filed. This answer also states, that "the respondent retained his vendor's lien in his deed to the complainant," which he asks the court to enforce according to its terms. The answer further states, that "he assigned to Wm. B. Brooks for full value one of the notes for four hundred dollars, and that it is unpaid but is held by said Wm. B. Brooks as his own property." This assignment, the answer says, was made, when Wm. B. Brooks was negotiating for the purchase of this house and lot of Mrs. Catharine McMullen, but the purchase was never consummated.

The answer then in a very unintelligible manner says: "The next note was paid leaving the six last notes of four hundred dollars each unpaid." The answer prays, "that the court will appoint a commissioner to sell said house and lot for the payment of his vendor's lien retained in the deed." By the "next note, which was paid," is meant obviously the two hundred dollars note, which was payable sixty days after its date and was dated October 29, 1872. This is clear, as the answer expressly states, that all the notes for four hundred dollars each were unpaid. Why this two hundred dollars should be called the "next note," it is difficult to conceive, unless it meant, that it was the next one due after the transfer of the four hundred dollars note to W. B. Brooks. But however blunderingly this may be expressed, there can be no doubt, that the note, which the answer intended to state was paid, was the two hundred dollars note; and this appears from the answer itself.

At the court in May, 1875, Wm. B. Brooks, the party named in this answer, appeared and tendered an answer to the bill, though his name was not mentioned in the bill, and he was made no party thereto; but the entry on the record is: "This day came the complainant by his counsel, and thereupon came the defendant, Wm. B. Brook, by his counsel and tendered his separate answer to the complainant's bill; and there being no objection thereto, it is ordered, that the same be filed; and the complainant replied generally to said answer." The answer itself begins as follows: "Wm. B. Brooks asks to be made a party defendant and for answer says, that he holds by assignment from D. Eagan for value the

first four hundred dollars note which is a lien upon the property named in the bill; that the said note is due and wholly unpaid. Respondent asks, that the house and lot be sold to pay the same. All the allegations in the bill charging its payment are untrue." This answer is sworn to.

W. C. Brooks, also who was no party to the cause but is merely stated in the bill to have paid to Eagan this note, filed his answer, which was also sworn to, in which he says, that he has no interest in the suit; that he merely as agent for his son W. B. Brooks purchased this note of D. Eagan, which she endorsed and assigned to him.

The complainant also filed a special replication to the answer of W. B. Brooks, in which she denies, that he was the owner of this note, and alleges, that it is fully paid off and discharged, but does not say, that it was paid by her or by any agent of hers. She also filed a special replication to the answer of D. Eagan, in which she says, that the additional certificate of the notary-public did not render his deed, so far as it conveyed the dower-interest of his wife, valid, and claims, that he is not entitled to the affirmative relief which he asks. These special replications were filed February 3, 1876.

On June 3, 1876, the cause was heard on these pleadings; and the court "was of opinion, that the deed from D. Eagan and wife filed in this cause it now properly acknowledged." (There appeared, then on the back of said deed an acknowledgment of it by D. Eagan and Mary F. Eagan, his wife, in proper form, which acknowledgment was again formally and properly made before the clerk of the county court of Kanawha on January 11, 1875, as appears by the endorsement now on said deed.) And the court ordered the said deed to be delivered to the clerk of the Kanawha *circuit* court for record in his office. Thus another blunder was committed. Doubtless the county court of Kanawha was meant. The court was also of opinion that the house and lot in said deed named were liable to the defendants D. Eagan and W. B. Brooks, his assignee, for the two thousand four hundred dollars of unpaid purchase-money, naming the times the various portions of it fell due; and that the house and lot were liable to be sold for the four hundred and eighty-eight

dollars then due to W. B. Brooks and the nine hundred and ninety-four dollars then due D. Eagan; and it was decreed, that unless Catharine McMullen or some one for her did pay the same within ninety days from the rising of the court together with the costs of the suit, T. B. Swan as special commissioner should after proper advertisement specified and on proper terms specified sell the same. The decree closes by saying, that he is "not to execute the same, until he has given bond before the clerk of this court in the penalty of one thousand dollars for the faithful performance his duties as such commissioner according to law.

A sale was made under this decree and a very imperfect report of the sale was made, which as well as the report itself was excepted to both by Wm. B. Brooks and by Catharine McMullen and on January 11, 1878, the court sustained these exceptions and set aside the sale and ordered the special commissioner to again execute the decree of sale. The first sale was made to D. Eagan for one thousand five hundred dollars. A second sale was made for the same price. It was not knocked down by the commissioner till he had offered on three several occasions by adjournments, when, no better bid being made, it was knocked down at one thousand five hundred dollars to J. M. Payne and S. C. Green. This sale was excepted to by Catharine McMullen for inadequacy of price, and six affidavits were taken to show the inadequacy of the price and four to show, that it was an adequate price. The court by its decree of June 8, 1878, confirmed this sale, ordered a deed to be made to the purchasers and awarded a writ of possession of the property to be executed by the sheriff, and a deed to be made to the purchasers; and the court reciting, that its attention was brought to the fact, that there were unpaid taxes on the property, directed the special commissioner to pay the same. During the same term of the court however this decree was set aside with the consent of the purchasers as improvidently made; and James H. McMullen having made an advanced bid of one hundred dollars, the sale was set aside. Against this action of the court D. Eagan protested and filed his affidavit in the cause, which was considered by the court in making this decree. This affidavit states, that Catharine McMullen has no prop-

erty real or personal except this house and lot; that it has been sold for delinquent taxes, and unless the sale, which had been made by the commissioner, was confirmed, he, D. Eagan, has no means of paying these delinquent taxes and so claiming this property; and that if the sale is confirmed, the decree may be made with his consent releasing her from all the residue of the debt, and thus she will realize more than the one thousand six hundred dollars, the bid of James H. McMullen.

.. A third sale of this property was then made by the commissioner of sale for one thousand six hundred and forty-five dollars to Mrs. E. V. Oakes, who was the highest bidder; and it was reported to the court by the commissioner of sale. She was also reported to have complied with the terms of sale. On her bonds for the deferred payments the commissioner of sale reports, that W. J. Oakes and E. S. Irwin were her sureties. This sale was again excepted to by Catharine McMullen because of the inadequacy of price, and because the commissioner had not given the bond required by the order of sale; but it now appears by the record before us, that this bond had been given on the —— day of ————. The court overruled these exceptions and confirmed this report and sale by the decree of December 20, 1878; but the decree falsely recites: "That it appeared to the court by said report, that W. J. Oakes was the purchaser at the price of one thousand six hundred and forty-five dollars, and that he had complied with the terms of sale." The court also decreed, that an habere facias possessionem be awarded him, and that the sheriff do put him in possession of the said house and lot within thirty days from the rising of the court.

An appeal and *supersedeas* were allowed to this decree as well as to the decree directing the sale in the petition of Catharine McMullen.

*W. A. Quarrier* and *W. S. Laidley* for appellant, cited the following authorities: 2 Munf. 289; Code ch. 125, § 57; Cooper Eq. Pl. 42; *Id.* 45; Mit. Chy. Pl. 37; Cooper Eq. Pl. 85, 86; Story Eq. Pl. § 393; Sandf. Ch. N. Y. 210; Mit. Ch. Pl. 80; Story Eq. Pl. § 389; 1 Eden Injunc. 190; 3 Atk. Ch. 812; 19 E. L. & Eq. 325; Lubes Eq. Pl. 142, note 1 and

308, note 1; 17 How. 130; 8 Cow. N. Y. 361; Story Eq. Pl.
§ 401; Danl. Ch. Pr. 1551, notes 1 and 9; 19 N. Y. 529; 1
Wall 5; 23 Ala. 219; 12 Mich. 94; 14 Vt. 208; 24 Vt. 181;
3 Cain. R. 19; 9 Wall. 807; 14 W. Va. 637; 3 J. J. Marsh.
262; 6 Daud 186; 8 Cow. 361; 13 Ga. 478; 23 Ala. 219; 19
N. Y. 529; Adams Eq. 769, note 3; 2 Rob. Pr. (old) 318.; 1
Danl. Chy. Pl. & Pr. 334 *et seq*; 3 W. Va. 11.

*J. W. Kennedy* and *Watts & McCorkle* for appellees, cited
the following authorities:   2 Danl. Chy. Pr. 1550; Langdell
Eq. Pl. 78, 80; Story Eq. Pl. 392; 2 Danl. Chy. Pr. 1549,
note 1; 10 W. Va. 128; 8 Gratt. 580; 10 Gratt. 557; 3 W.
Va. 672; 6 W. Va. 336; 1 Danl. Chy. Pr. 246 *et seq*. ; *Id.* 382,
note 2; 14 W. Va. 334; 3 W. Va. 163; 7 W. Va. 567; Bisp-
ham Eq. 437; 2 Call. 184 ; 7 W. Va. 707; 2 Danl. Chy. Pr.
1463; *Id.* 1461, note 2; 10 W. Va 122; 9 Gratt. 579; Code
ch. 134, § 6; Kelly's Rev. Stat ch. 160.

*T. B. Swann* for appellees.

Green, Judge, announced the opinion of the Court:

The first error assigned is, that on the bill of injunction
and the answer of the defendant, David Eagan, the injunc-
tion should have been perpetuated, and the complainant
should have been decreed the payment of the costs incurred
by her, and that the allegations in the answer of David
Eagan, on which he asked affirmative relief, were not such
allegations, as could have sustained a cross-bill, and the court
should have dismissed the same, so far as it sought affirma-
tive relief.   The injunction granted not only enjoined the
sale already advertised but also enjoined the trustee and the
defendant, David Eagan, from again offering this house and
lot for sale.   This injunction could have been properly per-
petuated, only in case the deed of trust was fatally defective
as a deed.

The defect claimed to exist in it was, that it was not prop-
erly acknowledged by the complainant, a married woman
living with her husband.   The Code of West Virginia
chapter 73, § 4 and 6, provides in substance, that a deed
signed by a married woman shall operate to convey from the

wife her right of dower and all her interest of every nature in the land, when it has been properly admitted to record both as to her and as to her husband and not till then; and that before it can be admitted to record, she must appear before a proper officer and having been examined by him privily and apart from her husband and having had the deed fully explained to her, she must acknowledge the same to be her act and declare, that she had willingly executed the same and does not wish to retract it, and all this must be reduced to writing and put on record with the deed.

The language of this fourth section seems clearly to indicate, that the privy examination of the wife separate and apart from her husband and the full explanation of the deed to her, must precede the acknowledgment of the deed by her. Our courts have always required a substantial compliance with all the requisites of this law. The privy examination must take place. *County* v. *Geiger*, 1 Call. 193; *Harvey* v. *Pecks*, 1 Munf. 518. So the certificate must show, that the deed was fully explained to her. *Harston* v. *Randolph*, 12 Leigh 495. It must also show, that she declared, that she did not wish to retract it. *Grove* v. *Zumbro*, 14 Gratt. 501; *Linn* v. *Paton*, 10 W. Va. 198; *Bartlet et al.* v. *Fleming et al.*, 3 W. Va. 163. So it must show, that she declared, that she had willingly executed the same. *Bartlet et al.* v. *Fleming*, 3 W. Va. 163; *Leftwitch* v. *Neal*, 7 W. Va. 569. These decisions as well as the authorities in other States establish the proposition, that the certificate must show that the statute-law has been in all respects substantially complied with. See authorities cited in *Laughlin Bros.* v. *Freame et al.* 14 W. Va. 335.

These decisions, in their spirit, seem to require us to declare null the deed of a married woman unless the certificate shows, that the acknowledgment of it was made after she had been examined privily and apart from her husband and had the deed fully explained to her. If she, as in the execution of the deed from Catharine McMullen to Swan, trustee, acknowledges the deed with her husband, though it be afterwards fully explained to her and she declares she had willingly executed the same and does not wish to retract it, still such deed must be held to be a nullity. We can not regard

as unimportant the requirement of the statute, that the acknowledgment by a married woman of a deed should be made separate and apart from her husband, and after the deed has been fully explained to her.   If the certificate as in this case shows, that the deed was acknowledged by the husband and wife together though it shows, that there was a subsequent privy examination and a compliance with every other requisite of the statute, yet, such certificate is fatally defective and the deed is void so far as it operates to convey any interest of the wife.   These views are sustained by authority.   See *Allen and wife* v. *Shortridge, &c.*, 1 Duval (Ky. R.) p. 34, and *D. D. Dewey et al.* v. *Joseph Campau*, 4 Gibbs, (Mich. R.) p. 565.

It follows from these principles, that the deed of trust executed by J. H. McMullen and Catharine McMullen, to T. B. Swan, trustee, dated October 29, 1872, was inoperative to convey the house and lot of Mrs. Catharine McMullen, as the certificate of her acknowledgment of it, on its face shows, that she acknowledged it for recordation in the presence of and jointly with her husband, instead of when she was separate and apart from him and after it had been fully explained to her as the statute-law requires.   For the same reason, the deed from D. Eagan and his wife Mary F. Eagan, dated the same day, conveying this house and lot to Catharine McMullen, was inoperative to convey or bar the contingent dower interest of Mary F. Eagan in this house and lot.   Nor was this defect caused by the officer, who took this acknowledgment, re-writing this certificate on the back of the deed, and dating this new certificate as of the date of the deed and writing it in the proper form showing, that the acknowledgment of it was not made by Mary F. Eagan in the presence of her husband.   For it is not the fact that the privy examination and the acknowledgment by the wife of the deed, when separate and apart from her husband are alone sufficient to make the deed of a wife valid against her.   A record of it must be made, and when made, like other records, it is a verity and cannot be corrected or changed afterwards by the officer.   It has been held, that it can not afterwards be corrected and made good, if not originally recorded in a proper form by the formal judgment of a court.   See *Elliott*

*et al* v. *Piersol et al.*, 1 Peters R. p. 329. But the formal acknowledgment of this deed, in the proper manner, made by D. Eagan and Mary F., his wife, nearly three years afterwards, on January 11, 1875, before the clerk of the court for Kanawha county, and his endorsement of this new acknowledgment in proper form on this deed cured this defect and made this deed valid against her; because it was equivalent to the re-execution of the deed, or the making of a new deed conveying this house and lot in the proper manner.

We do not understand, that the law as we have stated it, has altered or affected our acts concerning married women. See chapter 66 of Code of West Virginia, p. 417. The third section of this act provides, that "no married woman unless she is living separate and apart from her husband, shall sell and convey her real estate, unless her husband joins in the deed or writing by which the same is sold or conveyed." The apparent meaning of this is, that it was not intended by chapter 66 of the Code of West Virginia to make any change in the manner, in which the real estate of a married woman whether her separate estate or not, was to be conveyed.

It would be unreasonable to construe this section as authorizing a married woman to convey her separate real estate, simply by her husband joining with her in the deed without any privy examination of her, for we would then construe this section as taking away from married women a protection against the undue influence of husband, which had always been afforded her by our law and which protection the courts had steadily upheld in its full vigor. It cannot be supposed, that the Legislature intended to do this, as the very object of this chapter 66 of our Code p. 497, was to give to married women increased protection of their property against both the husband and his creditors; an effect, which to a large extent, would be defeated if we were to construe this third section as dispensing with the privy examination of the wife when she conveyed her real estate, if it was her separate property.

There is then, as we have construed this third section of chapter 66 of our Code p. 448, nothing in this act which would render valid this deed of trust executed by Catharine

McMullen to Thos. B. Swan, trustee, but which was never properly acknowledged. The construction of this third section of chapter 66 of our Code, in this respect, has not been heretofore made by our Court. It was considered in the case of *Radford* v. *Carwyle*, 13 W. Va. p. 572, but the decisions of he true interpretation of this section in this respect, was then waived by the Court, it not being necessary to the decision of that case. The deed of trust executed by Catharine J. Mullen being in operation it is claimed, that the injunction should have been perpetuated and that she should have been decreed her costs. This would follow unless the answers which prayed affirmative relief can be regarded as a cross-bill. They are quite informal, but under our Code must be regarded as the equivalent of a cross-bill provided, that the facts stated in them are such as would, before the passage of our Code, have been as a proper basis for a cross-bill.

Now a cross-bill is a mere auxillary suit, a dependency of the original. It may be brought by the defendant against the plaintiff in the same suit or against other defendants or against both, but it must be touching the matters in question in the bill; as when a discovery is necessary or as when the original bill is brought for a specific performance of a contract, which the defendant at the same time insists ought to be delivered up and canceled; or when the matter of defense arises after the cause is at issue. See *Cross* v. *De Valle*, 1 Wallace 14; *Gallatin* v. *Cunningham*, 8 Cow. 361; *Slason* v. *Wright*, 14 Vt. 208; *Rutland* v. *Paige et al.*, 24 Vt. 181; *Andrews* v. *Kibbee*, 12 Mich. 94; *Draper* v. *Gordon*, 4 Sandf. Ch. R. 225.

The question then is, was this cross demand in the answers in this case, on which they asked affirmative relief, properly speaking, touching the matters in question in the bill? Do these answers operating as a cross-bill under our statute introduce other matters distinct from those stated in the original bill, and on which it was based, or are these matters, on which this affirmative relief is asked confined to the matters involved in the original bill? What is sought in these answers by way of affirmative relief, is the enforcement by the court against the plaintiff, of her notes given for the purchase-money of the house and lot named in the bill, by reason of a vendor's lien having been retained in the deed to her

to secure the payment of these notes. Was this introducing new matters distinct from those stated in the bill and on which the bill itself was based?

To determine this, we must examine the bill and determine about its full scope and object. Had it been simply an injunction suit either to prevent the sale of the complaint's house and lot, under the deed of trust she had given, because it had been insufficiently acknowledged by the plaintiff, a married woman, or because it had not been properly advertised, it would seem clear on the principles laid down and on these authorities, that the defendant, David Eagan, could not in a cross-bill or under our statute by his answer in the nature of a cross-bill, have asked the court to have this house and lot sold by its commissioner, because of a vendor's lien he had retained on this property. For in such case, it would have been introducing into the suit new and distinct matters not embraced in the original suit. But was this the full scope and object of the bill? If this had been its sole object there was neither necessity nor propriety in alleging in it, that the vendor's lien was retained in the deed to the plaintiff to secure the same identical notes, which were secured by the deed of trust had it not been fatally defective.

The bill however refers to the deed conveying the said house and lot to the plaintiff, and states its contents and files a copy of this deed as a part of the bill, and it further says: "She refers the court to the fact, that the *vendor's lien* was expressly reserved in said deed to secure the deferred installments of the purchase-money; and if said deed had been properly executed by the wife of David Eagan, the said vendor's lien would be a valid lien for the purposes intended. But, notwithstanding the reservation of the vendor's lien in said deed, the said David Eagan required your oratrix and her husband to give him a deed of trust upon said property to secure the payment of said deferred installments, which were already intended to be secured by the reservation of the vendor's lien in the deed delivered to her by David Eagan."

The bill declares, that the wife of David Eagan did not properly acknowledge this deed, and that thus her title to this property was incomplete and imperfect as the wife of David Eagan had in it a contingent right of dower. General

relief is asked in this bill, and under this prayer and the allegations in the bill, the court might in this cause have properly decided, whether this acknowledgment of the wife of David Eagan was binding on her, and whether the plaintiff's title to this property was imperfect and to what extent imperfect. It was also claimed in this bill, that one of the four hundred dollars purchase-money notes had been paid off, but was still claimed to be due and this could also have been properly enquired into by the court, in this cause, and a credit directed to be given on these purchase-money notes for whatever have been paid, and also the proper abatement to be made from them for the contingent right of dower of the wife of David Eagan, if the court decided that she had such contingent right of dower in this house and lot. If we are right about the scope of this bill and the subjects of controversy involved in it, then it would follow, that an enquiry was involved in this suit as to the validity or the extent of the validity of this vendor's lien named in the bill, and as to how much of the purchase-money secured by it could be enforced. Therefore, a cross bill asking the enforcement in full of this vendor's lien was proper to be filed, as it did not introduce into the suit new and distinct matter, but only asked relief in reference to a matter stated in the bill, and which it was a part of the object of the bill to have enquired into by the court in this suit.

The next enquiry is, whether the decree of June 3, 1876, was or was not erroneous in adjudging, that there was due from the plaintiff Catharine McMullen to W. B. Brooks, as assignee of David Eagan, the first note of four hundred dollars with interest from October 29, 1872, by the assignment of said note by David Eagan. This is contradicted in the special replication of the plaintiff to the answer of W. B. Brooks, and it is claimed that the pleadings show that, this note is paid. The deed to the plaintiff as well as the deed of trust from her, secures this note and it is set out in these deeds as an existing and unsatisfied debt. This acknowledgment of this debt throws on the plaintiff the burden of proving, that it has been paid, and not a particle of evidence was produced to show that it was paid; and its assignment to W. B. Brooks for value, is admitted in the answer of David

Eagan the payee in this note. It must therefore be regarded as due despite the bungling statement in the answer of David Eagan.

. The statement of the case showed, that what he really admitted in this answer to be paid, was only the two hundred dollar note due to the plaintiff sixty days after the sale, and that none of these four hundred dollar notes had been paid. It is said that Wm. B. Brooks was no party to the cause. It is true he was not even named in the bill but the answer of David Eagan states, that he was the owner of the four hundred dollar note, which the bill in a loose way said was paid; and of course the proper mode of making him a party, was after this answer was filed, to have required him to be made a party by an amendment of the bill. It is also true, that no one could properly be made a defendant to a cross-bill except persons, who were parties to the suit as plaintiffs or as defendants. "New parties cannot be introduced into a cause by a cross-bill. If the plaintiff desires to make new parties he amends his bill and makes them. If the interest of the defendant requires their presence, he takes the objection of *non-joinder*, and the complainant is forced to amend, or his bill is dismissed. If, at the hearing, the court finds that an indispensable party is not on the record, it refuses to proceed. These remedies cover the whole subject, and a cross-bill making new parties is not only improper and irregular, but wholly unnecessary." See *Shields et al.* v. *Borrow*, 17 How. 145. This obviously proper course was not pursued in this case.

The answer of David Eagan sworn to showed, that W. B. Brooks was a necessary party to the cause; that he had not been made so by the bill, and without any amended bill being filed making him a party, he files his answer claiming to be the owner of one of the notes stated in the bill to have been paid, and denying that any part of it was paid. This was so irregular, that had it been objected to in the court below, a decree in favor of W. B. Brooks must have been reversed by this Court. But it was in no manner objected to, on the contrary the record shows what may be considered as implied assent by all parties to this irregular proceeding. The entry made on the record when this improper answer of W.

B. Brooks was filed states, that the plaintiff by his counsel, was then present and that no objection was made to this answer and thereupon it was ordered to be filed and the plaintiff replied generally to it. She afterwards filed a special replication to this answer, but in no manner objected to the gross irregularity of any answer being filed by W. B. Brooks. He was thus treated throughout in the court below as if the bill had stated, that he claimed to be the owner of the four hundred dollar note which the bill alleged was paid, and as if he had been made a defendant in the court below. This we think debars the plaintiff from alleging in this Court, that he was not a proper party to the suit; and so regarding him there is no error in the decree of sale of June 30, 1876.

The court in that decree properly regarded as curing all defects, the acknowledgment by the wife of David Eagan of the deed to the plaintiff made on the 11th day of January, 1875, before the clerk of the county court of Kanawha; his certificate made on said deed showing, that it was again properly acknowledged by David Eagan, and further showing, that his wife personally appeared before said clerk, in his office, and was by him examined privily and apart from her husband; that the deed was fully explained to her; that she acknowledged it to be her act and declared that she had willingly executed the same and did not wish to retract. This was equivalent to the execution of another deed by them and its due acknowledgment and recordation, and it cured all defects which existed in the original deed.

This decree concludes, that "commissioner Swan is not to execute this decree, until he has given bond before the clerk of this court in the penalty of one thousand dollars for the faithful performance of his duties as such commissioner according to law." This was an unnecessary provision. The law only requires, that the commissioner should give bond with good security before the clerk of the court, faithfully to perform the duties of his office, before he collects any money under a decree of sale; and this should properly have been the provision of his decree, as a commissioner of sale may properly make such sale without giving any bond, though he can not be authorized to collect and can not collect any portion of the purchase-money, without giving such bond. But,

in this case no evil resulted from this improper requirement of the court, for it now appears by the record as amended by the agreement of parties, that this bond was given and acknowledged before the clerk by the parties and approved on August 29, 1876, which was prior to any sale of the property by the commissioner. The exception to one of the sales because this bond had not been given, had really no foundation in point of fact, on which to rest.

The court did not err in refusing to confirm the first report of sale, because it was utterly defective in showing how the sale had been made or when, or that the terms of sale had been complied with. The court it seems to me, ought not to have set aside the second sale because of the advanced bid of one hundred dollars, because it was an inadequate advanced to justify a re-sale, the price at which it had been sold being one thousand five hundred dollars, and because Daniel Eagan by an affidavit filed showed, that he could if the sale was confirmed, have released to the plaintiff all demands against her for the residue of his debt, beyond what he would have received from this one thousand five hundred dollar sale ; and this would have been more beneficial to the plaintiff than a sale of the property at more than one thousand six hundred dollars.

The affidavits filed did not show, that one thousand five hundred dollars was such an inadequate price as justified the court in setting aside this sale. It is true, that five or six years before the plaintiff had bought this house and lot for three thousand four hundred dollars, that six witnesses made affidavit, that they were well acquainted with the house and lot and believed they were worth two thousand five hundred dollars. On the other hand three other witnesses, as well as David Eagan swear, that they know the property well and they believed one thousand five hundred dollars was its full value. One of these was a person, who wished to purchase but would not bid at the sale more than one thousand four hundred and five dollars, which he regarded as its full value. This together with the fact, that the commissioner of sale had made at different times, as his report shows, great efforts to sell this property at the highest price he could get, and had postponed the sale to different days to get a better bid if

possible, and did not knock it down till he had thus offered it there several times, and that at last he got no greater price offered at this second sale than he did at the first, ought to have prevented this sale from being set aside for inadequacy of price. At the third sale this property brought one thousand six hundred and forty-five dollars and the sale was properly confirmed by the court.

There was however a blunder on the face of the decree of December 20, 1875. The commissioner of sale reported, that the sale had been made to Mrs. E. V. Oakes for one thousand six hundred and forty-five dollars. But this decree says, "it appearing to the court by said report that W. J. Oakes was the purchaser at one thousand six hundred and forty-five dollars it was ordered, that the sheriff put him in possession of said property. This was apparently a clerical error, the name of W. J. Oakes being inserted in the decree as the purchaser named in the report of sale by the commissioner, when in fact Mrs. E. V. Oakes was the purchaser and had complied with the terms of sale. But this error should have been corrected by motion under the 5th section of chapter 135 of Code of West Virginia, p. 638. No such motion having been made, it constitutes no ground for reversing said decree, but we may correct said decree and affirm the same.

We will not make this correction in this Court, because though apparently it is a mere clerical error yet, it is possible that there is some agreement between the purchaser, Mrs. E. A. Oakes, and her security W. J. Oakes, whereby this property is to be conveyed to him instead of her, and he then substituted as purchaser. If this happens to be the case, there can be no objection to carrying it out by a proper decree of the court; but of course the decree on its face should show, that with the consent of E. A. Oakes, W. J. Oakes had been substituted in her place as the purchaser, and proper provisons should be made for enforcing the deferred payments of the parties for the land sold; and the commissioner should be required, before he collects the deferred payments of the purchase-money, to give a bond in a larger penalty than one thousand dollars.

The decrees appealed from should therefore be affirmed,

and the appellant should pay to the appellees their costs in this Court expended and thirty dollars damages, and this cause should be remanded to the circuit court of Kanawha with instructions to correct the decree of December 20, 1875, so as to substitute in it the name of Mrs. E. V. Oakes, in lieu of W. J. Oakes, unless by her consent entered of record, he be substituted for her as the purchaser of said house and lot; and with further instructions to proceed with the case according to the rules governing courts of equity and especially, that the court require of the commissioner of sale, or of any other person whom it may authorize to collect the deferred payments for the said house and lot; a bond in the penalty of one thousand five hundred dollars to be given before the clerk of the circuit court of Kanawha, conditioned according to law.

JUDGES JOHNSON AND HAYMOND CONCURRED.

DECREES AFFIRMED. CAUSE REMANDED.