# CHARLESTON.

IVORY HILL COAL & COKE COMPANY *et als* v. HARRISON-
BARBOUR COAL COMPANY *et als*, CITIZENS DOLLAR
SAVINGS BANK *et al.*, *Appellants*

(No. 5479)

Submitted May 18, 1926.     Decided June 1, 1926.

1. FRAUDULENT CONVEYANCES—*Creditor Successfully Attacking
    by Proper Pleadings and Proof Fraudulent Transfer of
    Personalty by His Debtor is Entitled to Preference in Pay-
    ment of Debt Out of Such Property But Not to Exclusion
    of Prior Liens Thereon.*

    The creditor who successfully attacks by proper pleadings
    and proof a fraudulent transfer of personal property made
    by his debtor, is entitled to preference in the payment of his
    debt out of that property, but not to the exclusion of valid
    subsisting prior liens thereon.     (p. 734.).

    (Fraudulent Conveyances, 27 C. J. § 828.)

2. EXECUTION—*Appointment of Receiver for Defendant Corpora-
    tion in Suit to Assert Debt Against it, in Which Other
    Creditors Were Enjoined Against Prosecuting Suit Against
    it, Does Not Prevent Creditor of Plaintiff From Taking
    Judgment and Execution Lien Against His Property, Al-
    though it May Happen That Only Property He Owns is
    Debt Against Corporation on Which He Sued.*

    The appointment of a receiver of the property and assets
    of a defendant corporation in a suit to assert a debt against
    it, in which an injunction is awarded against other creditors
    restraining them from prosecuting suits against the defend-
    ant corporation, does not prevent a creditor of the plaintiff
    from taking judgment and execution lien against his prop-
    erty, although it may turn out that the only property he
    owns is the debt against the corporation on which he has
    sued.     The property of the plaintiff is not in *custodia legis*
    so as to prevent liens from being taken against it.     (p. 734.)

    (Execution, 23 C. J. § 107.)

3. EQUITY—*Answer After Responding to Bill Must State New
    Matter Relied on For Affirmative Relief With Same Par-
    ticularity and Certainty As is Required in Formal Cross-
    Bill Stating Case for Equitable Relief Touching Matter in*

*Question in Bill, and Must Name Persons Interested in Such New Matter, Making Them Parties by Calling for Process Against Them, and Must Contain Prayer for Relief as Cross-Bill Would.*

Point 5 in the syllabus of *Goff* v. *Price*, 42 W. Va. 384, relating to the requisites of an answer setting up new matter constituting a claim for affirmative relief, approved and applied.     (p. 733.)

(Equity, 21 C. J. § 615.)

4.  FRAUDULENT CONVEYANCES—*Where, in Chancery Suit, Defendant Creditor of Plaintiff Files Crossbill for Affirmative Relief Against Fraudulent Transfer of Personal Property, Setting Up Lien of Fieri Facias Against Such Property, His Pleading Does Not Have to be in Name of Officer Holding Execution or Other Officer Appointed by Court (Code, c. 141, § 15).*

Where, in a chancery suit, a defendant creditor of the plaintiff files his cross-bill answer praying for affirmative relief against a fraudulent transfer of personal property from the principal defendant to the plaintiff, and setting up his lien of fieri facias against the property fraudulently transferred, it is not necessary that his pleading should be in the name of the officer holding the execution, or other officer appointed by the court, as provided in Sec. 15, Chap. 141, Code.     (p. 735.)

(Fraudulent Conveyances. 27 C. J. § 626.)

5.  CORPORATIONS—*In Absence of Showing That Former President of Corporation Participated in Creation of Debt to Bank, or That He Knew it Was Furnishing Money Which Was Paid Landowners for Property, Though Such Debt Was Contracted While He Was Acting as President, His Lien of Execution Was Not Inferior in Equity to Claim of General Creditor Based on Such Debt.*

A case wherein a general creditor of an insolvent corporation has not superior equity in the payment of his debt over the lien of an execution obtained by a former president of the corporation, although the debt of the former was contracted while the latter was acting as such president.     (p. 736.)

(Corporations, 14a C. J. § 3297.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Harrison County.

Suit by the Ivory Hill Coal & Coke Company and others against the Harrison-Barbour Coal Company and others, in

which a receiver was appointed. From a decree giving preference to Edward Thompson as a creditor of the named plaintiff, the Citizens' Dollar Savings Bank, by John Henshaw, its receiver, and another, appeal.

*Affirmed.*

*Charles Powell, John Henshaw,* and *Kemble White,* for appellants.

*Hoffheimer & Templeman,* for appellee, Edward Thompson.

Lively, Judge:

The appellant asserts priority over appellee, Edward Thompson, to a fund of $9,290.87 in the hands of a special commissioner, derived from a sale of the assets of the Harrison-Barbour Coal Company; or, if priority is denied, then it should participate ratably with appellee in the distribution of that fund. The parties on this appeal, Citizens Dollar Savings Bank by John Henshaw its receiver, appellant, and Edward Thompson, appellee, are creditors of Ivory Hill Coal Company; and the fund to which both claim preference, now in the hands of the court's officer, was derived from a sale of the corporate assets of the Harrison-Barbour Coal Company in this suit brought for that purpose by Ivory Hill Coal Company and others claiming to be creditors of the Harrison-Barbour Coal Company, on January 25, 1916, when a receiver was appointed to take charge of the assets of defendant company, and a restraining order was entered against other creditors from prosecuting other suits to collect their debts. The decree gave preference to Thompson, who had obtained judgment against Ivory Hill Coal Company on Aug. 23, 1914, and had issued execution thereon March 2, 1916, returned by the sheriff "nulla bona," and afterwards docketed in the execution lien dockets in Harrison and Barbour Counties, the amount, with interest at the time of the decree, being $11,613.02. The Bank's debt was represented by notes and bonds amounting to more than $93,000.00. So, if the decree stands, the Bank will receive nothing from the fund, Thompson's judgment being in excess of the fund.

Both parties are creditors of the plaintiff. The case would seem to be rather unusual, because it has resulted in the winding-up of the affairs of a plaintiff in a suit by it against another corporation, instituted for the purpose of collecting a debt against the latter.

In the year 1909, the Ivory Hill Coal Company deeded its corporate assets consisting of about 1500 acres of coal in the Pittsburgh and Redstone seams in Harrison and Barbour Counties, to the Harrison-Barbour Coal Company, a corporation organized for that purpose by some of the stockholders in the Ivory Hill Coal Company and others, the consideration being that the Harrison-Barbour Coal Company should issue its bonds to the amount of $500,000.00 secured by the coal property and deliver to Ivory Hill $300,000.00 of the bonds, and expend the proceeds from the remaining $200,-000.00 in purchasing adjoining coal and constructing a railroad into the coal field for development. The bonds were issued and $300,000.00 of them were delivered to Ivory Hill Company as agreed. At that time the Ivory Hill Company owed about $170,000.00 to various creditors, including Thompson and the Bank, parties on this appeal. Some of these creditors were pressing for payment, and in order to meet their demands Ivory Hill Company entered into an arrangement with Oliver J. Sands, Lawrence E. Sands, Harry S. Sands and Howard W. Showalter, designated in the record as the "Syndicate," whereby on Nov. 18, 1919, it turned over to the syndicate $100,000.00 of these bonds, the syndicate agreeing that it would assist Ivory Hill Company in securing further loans of $60,000.00 to tide over its pressing needs, the loans to be secured by other of the bonds of the Harrison-Barbour Company. Tersely stated, Ivory Hill Company gave to the syndicate $100,000.00 of the bonds for help in securing a loan of $60,000.00, which loan was secured by bonds remaining in its (Ivory Hill's) hands.

In 1914 Thompson secured judgment against Ivory Hill Company, and began a chancery suit in the Circuit Court of Marion County against Harrison-Barbour Company to charge that company with his debt against the Ivory Hill Company

and to that end to set aside the deed from the former company to the latter, and filed *lis pendens*. This suit was then instituted on January 25, 1916, for the purposes above stated. The members of the syndicate joined the Ivory Hill Company as plaintiffs, claiming that they were creditors of the Harrison Barbour Coal Company to the amount of the bonds held by them, namely, $100,000.00. In the progress of the suit the transfer of the bonds to the syndicate was successfully attacked as in fraud of the creditors of the Ivory Hill Company, and the proportionate share of the net proceeds of the sale of the coal which would have otherwise gone to the syndicate by reason of these $100,000.00 bonds, was ordered to be held by the special commissioner, subject to further disposition to the creditors of the Ivory Hill Company. The cause was then recommitted to a commissioner in chancery to ascertain the creditors of Ivory Hill Company as of Nov. 18, 1909 (the date on which the bonds were transferred to the syndicate), in the order of their dignity and priority against the fund, it being the only asset of the Ivory Hill Company with which to pay its creditors. In this way the fund of $9,290.87, the subject of the litigation on this appeal, came into existence. As above stated, the master commissioner reported Thompson's execution as the first lien, and the decree appealed from confirmed that report.

Appellant Bank says that it should have preference over Thompson because it attacked the transfer of the bonds to the syndicate as fraudulent, and it was through its pleadings and proof that the fund was produced, relying upon the familiar rule that the creditor who first attacks a fraudulent transfer by the attack, has a lien on the land or personalty thus saved, from the time of the filing of the bill, answer or petition, and is entitled to be first paid out of the proceeds of the property, if there be no valid prior liens. *Sweeny* v. *Sugar Co.*, 30 W. Va. 443; *Richardson* v. *Ralphsnyder*, 40 W. Va. 15; *Foley* v. *Ruley*, 50 W. Va. 158. Appellee answers that he acquired his lien against the personal property of Ivory Hill Company on March 2, 1916, when he issued execution on his judgment, and recorded his lien on the execution lien

dockets of the counties where the property was located prior to the filing of the Bank's answer to the bill in May, 1916, and therefore has a prior lien by virtue of the execution.

The bill filed on January 25, 1916, was against the Harrison-Barbour Company for the purposes above set out, by Ivory Hill Company and the members of the syndicate. There is no suggestion whatever in the bill that the transfer of the bonds to the syndicate was fraudulent. There was nothing therein which would prevent Thompson from either taking judgment against the Ivory Hill Company or issuing execution thereon, for the assets of the Ivory Hill Company were not in *custodia legis*. The receiver took charge of the assets of the Harrison-Barbour Company, and the injunction was against creditors who were proceeding against that company. There was no attack on the transfer of the bonds to the syndicate until the answer of the Bank came in on July 24, 1916; and upon an inspection of that answer we find that it simply denies that the members of the syndicate are lawful holders or owners of the bonds, and demands strict proof that they are such owners and holders. The answer is based upon the theory that the bank is entitled to payment of its debt out of the proceeds of the sale of the assets of the Harrison-Barbour Company because its debt was in existence against the Ivory Hill Company when the deed to the coal was made, and therefore took preference over the bonds issued as consideration for that deed. The answer can scarcely be considered as a cross-bill attack upon the transfer of the bonds to the syndicate. It asks no specific relief against it because of the transfer, and does not charge that it was fraudulently made. An answer in the nature of a cross-bill should be as definite and specific as a cross-bill and call for affirmative relief. *McMullen* v. *Eagan,* 21 W. Va. 233. In *Goff* v. *Price,* 42 W. Va. 384, this court said in point 5 of the syllabus: "Such an answer, after responding to the bill, must state the new matter for affirmative relief with the same particularity and certainty, under the principles of equity pleading, as required in a formal cross-bill, stating a case for equitable relief touching the matter in question in the bill, and not one foreign

to it, and must name persons interested in such new matter, and make them parties, by calling for process against them, and must contain prayer for relief as a cross-bill would in the case.''

Thompson's cross-bill answer, filed June 28, 1917, nearly a year later than the Bank's answer, specifically charges that the transfer was without consideration, was fraudulent and void as to his debt, and prayed that the members of the syndicate be summoned and required to answer his charge, and that the transfer to them be set aside and annulled.

It is true that many of the facts concerning the transfer to the syndicate had been brought to light in the suit before the filing of his cross-bill answer; but it is not clear that the fund was produced solely by the denial in the Bank's answer of the ownership of the bonds by the syndicate. Evidently the lower court so concluded, for it denied preference to the Bank. Besides, Thompson had acquired his lien before the Bank's answer was filed, even should it be held that the answer and the facts developed by reason of that answer produced the fund. A creditor successfully attacking a fraudulent transfer of his debtor takes preference over other creditors, if there are no valid prior liens. *Clark* v. *Figgins*, 31 W. Va. 156. The Bank insists that the priorities as against the fund should be fixed as of January 25, 1916, the date on which the bill was filed and the receiver appointed, which was more than a month before Thompson obtained his lien by execution; because the property was then in the hands of the court. The plaintiffs in that bill were seeking to assert and save their debts by placing the property of their debtor, the Harrison-Barbour Company, in *custodia legis*.

Where a plaintiff sues a defendant corporation to assert and collect a debt against it by sale of its corporate assets, and has a receiver appointed to preserve the assets pending the suit, the debt of the plaintiff is not in *custodia legis* in the sense that a creditor of the plaintiff is prevented from obtaining judgment and execution lien against him, although it may afterwards turn out that his only asset is the debt which has successfully asserted against the debtor cor-

poration. The cases cited by appellant to sustain the proposition that Thompson could not obtain a lien by execution after the day the bill was filed, January 25, 1916, namely, *Waggy* v. *Lumber Co.,* 69 W. Va. 666; *Miller* v. *Bank & Trust Co.,* 85 W. Va. 82, and cases of like import, do not apply for in those cases the property against which lien was sought to be obtained by the debtor was in the hands of the receiver of the court.

Another error in the decree is based on the proposition that while Thompson may have a lien upon all of the personal property of the Ivory Hill Company from the time his execution went into the hands of the officer, then owned by it although not levied thereon nor capable of being levied thereon, he is not entitled to the benefit of that lien in this suit, because he did not assert it in the name of the officer who held the execution, that is, did not follow the method of enforcing his lien as prescribed by Sec. 15, Chap. 141 of the Code; and is therefore barred from the benefit of his lien on this particular fund. Thompson's cross-bill answer was for the primary purpose of setting aside the deed from the Ivory Hill Company to Harrison-Barbour Company conveying the coal, and the deed of trust by the latter securing the bond issue, as in fraud of his judgment; but failing that relief, that the transfer of the bonds to the syndicate and of bonds of various other defendants be declared void, and that he be decreed payment of his judgment out of the proceeds of said bonds, and that the property of both Ivory Hill Company and Harrison-Barbour Company be held subject to payment of his judgment. The proceeding prescribed by Sec. 15, Chap. 141, Code, for enforcing his execution lien against these bonds owned by the Ivory Hill Company, but fraudulently held by the syndicate, if proper for that purpose, would have been inapplicable in purging the transaction of fraud; and having succeeded in restoring the bonds to the proper owner and having brought the proceeds of those bonds into court for distribution among the creditors of the debtor company by a proper proceeding in chancery, a proceeding to purge a transaction of fraud, we cannot see the necessity or

propriety of a proceeding in the name of the officer holding the execution, or other officer appointed by the court, under Sec. 15, Chap. 141, Code. The personal estate of the debtor fraudulently delivered to another has been restored to the debtor by a proper chancery proceeding, and the lien of the *fieri facias* of the creditor, preserved by the recordation on the execution docket, attaches to the property so restored, in the distribution of the proceeds of that property to the creditors. In *Stix* v. *York,* 84 W. Va. 446, the judgment creditor attempted to assert his lien against the interest of the debtor in a corporation in which the latter held stock, by a chancery proceeding in his own name, and we held the bill bad on demurrer, the exclusive remedy being under said Sec. 15, Chap. 141, in the name of the officer holding the execution. In the instant case a chancery suit of which the court had jurisdiction, in which the execution lien creditor was a party defendant, has resulted in the recovery of the property, and the court has proceeded to distribute it to those entitled thereto. Surely Thompson as a defendant therein could fully litigate his claim without the aid of an officer acting for his benefit. To supplement the chancery proceedings by another chancery suit in the name of an officer for the benefit of Thompson would be useless. Equity does not require it. The recovery of the property has been accomplished in the suit to set aside the fraudulent transfer of the bonds. In *Bolyan* v. *Hines,* 62 W. Va. 486, it was held that a fund in the hands of a special commissioner and decreed to be paid to a debtor is subject to garnishment in the hands of the commissioner.

· The remaining ground of error in the decree, relied upon by the Bank, is that although Thompson's judgment and execution are valid as against the Ivory Hill Company, they are not valid as against the Bank because its debt, although not reduced to judgment, is in equity entitled to preference. This alleged error is based on the inception and history of their respective debts.

Prior to 1903 Thompson, who lived in Harrison County, and John A. Clark, vice-president of the Bank, together with W. H. Nicholson, a director of the Bank, both of whom lived

in Fairmont, Marion County, entered into an agreement to purchase the coal afterwards transferred to Ivory Hill Company, with a view of selling it at a profit. The coal lay in about 36 separate tracts. Thompson was to have one-fourth of the profits of the coal when disposed of; or if the property was developed, then the value per acre was to be ascertained by arbitration, if necessary, and the difference between that value and the cost price was to represent the profits as to Thompson, who was then to be paid his one-fourth thereof and retire. Thompson took the options and did the field work. Clark or Nicholson caused checks to be issued on their bank (appellant) signed by Bijou Coal Company and payable to the landowner. These checks were paid by the Bank and held as cash items until they amounted to considerable sums ranging from $2,000.00 to $10,000.00, when they were taken up as cash items, and notes of the Bijou Coal Company put in the Bank. In this way a large part of the Bank's debt was contracted. They were trying to sell the coal thus purchased, and Thompson was authorized to sell it for not less than $125.00 per acre. At the suggestion of a resident of Pennsylvania, a Mr. John Mocie, who appeared to be interested in making a sale of the property, the Ivory Hill Coal Company was organized in 1905, took over the coal property, and issued bonds on it for $500,000.00. The debts of the Bijou Coal Company were assumed. About this time Nicholson retired from the adventure and James R. Linn, Cashier of the Bank, took his place. Thompson was acting as president of both companies, having one share of stock standing in his name.

About the year 1909, the bonds of the Ivory Hill Coal Company issued on the property were called in and cancelled. The Bank perhaps held some of them. On May 22, 1909, Thompson and the other directors and stockholders met, and Thompson's interest in the enterprise was compromised at the sum of $10,000.00, and they agreed to pay him $5,000.00 in cash and give him $5,000.00 in bonds of the Ivory Hill Company. He retired from the enterprise and was paid about $3,000.00 in cash. He never received the bonds. The balance, with in-

terest, was not paid, and was reduced to judgment by him in 1914, and is the judgment in question. In August 1909, the then stockholders of the Ivory Hill Company caused the Harrison-Barbour Coal Company to be formed which took over the assets of the Ivory Hill Coal Company as before stated, and issued its bonds.

Did Thompson know of the Bank's debt and the manner in which it was contracted? Did he participate in its formation? The evidence does not so indicate. The contract between Clark, Nicholson, Thompson, and their respective relations to the Bijou Company are contained in the minutes of that company of April 14, 1903. It appears that Clark and Nicholson were to furnish the money for the purchase of the coal, and stock was issued to them to the amount of the money furnished by them to pay for the options. Thompson was issued one share of stock. He was to be paid for obtaining the options out of the profits, if the property was sold; or, if the property was operated, he was to be paid as above stated, and retire. Then in 1909, when Sands, Showalter, Race and others entered upon the financial stage of the enterprise, Thompson's contract, or "equity" in the property, as some of the witnesses term it, was fixed at $10,000.00 by agreement.

The evidence and circumstances do not show that Thompson participated in the creation of the Bank's debt or that he knew it was furnishing the money, unsecured, which paid the land-owners for the property. It is reasonably clear that Clark and Nicholson were to take and pay for the property optioned by Thompson. The history of the formation of the respective debts of the Bank and Thompson, does not present a superior equity in favor of the Bank so as to entitle it to preference in the distribution of the fund.

We perceive no error in the decree.

*Affirmed.*